339 So.2d 1194 (1976)
STATE of Louisiana
v.
Frank J. SEARLE, III.
No. 57262.
Supreme Court of Louisiana.
May 17, 1976.
Rehearing Denied October 6, 1976.
Dissenting Opinions November 22, 1976.
*1195 Darrell D. White, White & May, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., James E. Boren, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Appellant Frank J. Searle III was charged by separate bills of information with the July 4, 1974 simple burglaries of the residences of J. H. Pace and A. S. Atkinson. La.R.S. 14:62. The charges were consolidated, and in a trial by jury, on July 30 and 31, 1975, Searle was acquitted of the Pace burglary and convicted of the Atkinson burglary.
Sentence was deferred for five years, during which time Searle was placed on active probation, a condition being that he spend one year in the parish jail. On this appeal three assignments of error are relied upon for reversal of the conviction and sentence.

*1196 Assignment 1

A motion to suppress was filed by defendant on April 24, 1975 alleging that on July 6, 1974 at 3:30 in the morning he was the victim of an unconstitutional search and seizure at the residence of his parents at 323 Kay Drive, Baton Rouge. Pursuant to this search, certain items allegedly the fruit of criminal activity were seized by the Baton Rouge City police who refused to produce a search warrant until the following day. The motion sets forth that no warrant existed at the time of the search and seizure; alternatively, it alleges that the search warrant was defective and not based upon probable cause.
All items seized were sought to be suppressed, including a brown fur rug, black and orange stereo equipment, a .38 Smith and Wesson pistol, an eight-track cartridge tape player and assorted eight-track tapes, hair dryer, hunting vest with shotgun shells, eight-track stereo-tape-carrying-case/box, and stereo headphones.

Display of the Warrant
At the hearing on the motion to suppress, the defense called Officer Sandesky. He testified that he answered a call from John J. Pace during the early morning hours of July 5, 1974. Pace complained at that time that his room, in his father's residence, had been burglarized. He also informed the officer that he had been at defendant Searle's house about four weeks before. During this visit he saw a fur rug and an orange tape player which he recognized as belonging to the Atkinsons, friends of his who lived nearby. Pace had visited the Atkinson house some time previously and had been these objects there. He asked Pace not to tell anybody.
Later that day Officer Sandesky checked with the Atkinsons who verified the fact that the rug and tape player were missing. Therefore he awakened Judge Parker in the early morning hours of July 6, 1974 and obtained a search warrant. Then, in company with other officers, he went directly to Searle's house to execute the search warrant.
He was met at the door by Jeff Gerald and informed him that a search warrant had been issued to search the house. Thereupon Gerald turned and walked down the hall to a back bedroom where Searle was sitting on the bed. Although neither Gerald nor Searle asked to see a copy of the search warrant, the officers nevertheless informed Searle that they had a search warrant, and they showed him a copy of it. They then proceeded to search for and seize the objects which are the subject of the motion to suppress, made an inventory, and gave Searle a copy.
Gerald testified to the contrary. He denied that the search warrant was ever shown to him or to Searle in his presence. Searle did not testify.
On the issue thus formed the question resolves itself into one of credibility. Since only Officer Sandesky and Gerald testified, both of whom were called as defense witnesses, there was no error in the ruling of the trial judge in accepting Officer Sandesky's version of the facts. Our review of the testimony is in accord with this finding. Officer Sandesky testified that he awakened the district judge in the early morning hours and proceeded directly to the residence where the search and seizure were conducted. No plausible reason is advanced why he would conceal the fact of the issuance of the search warrant obtained under such circumstances. The warrant signed by the judge and dated July 6, 1974 is attached to defendant's brief, and the transcript indicates that it was introduced in evidence.
Moreover, the Code of Criminal Procedure does not require the executing officer to display the warrant or furnish a copy to those present in the place searched. La.Code Crim.Proc. art. 167; cf. State v. Hills, 259 La. 436, 250 So.2d 394 (1971). And since there is no statutory *1197 requirement that the owners of the premises or the property seized be present at the time of the search, it would follow that the display of a warrant is not a necessary prerequisite to a valid search. La.Code Crim.Proc. arts. 161-67.

Probable Cause
Basing his argument upon constitutional principles announced by the United States Supreme Court, defendant contends that the affidavit and search warrant fail to reflect the requisite probable cause to support the search and seizure.
Officer Sandesky signed an affidavit before Judge Parker setting forth that probable cause existed for the issuance of a search warrant authorizing the search of the residence at 323 Kay Drive, Baton Rouge, where the following objects, fruit of a crime, were located: a black and orange stereo, brown fur rug, and assorted stereo tapes. The affidavit set forth that the probable cause was based upon the following:
"One John J. Pace advised Det. Sadesky that while at residence of Frank Searle of 323 Kay Dr. he John Pace observed a black and orange stereo and brn fur rug, that he knew belonged to the Atkinson Family on Goodwood. John Pace asked Frank Searle where he obtained items. Searle said "From the Atkinson house, but don't say anything to anyone."
The federal constitutional rule established by a line of United States Supreme Court cases acknowledges that an affidavit may be based upon hearsay, but it must contain underlying circumstances sufficient to convey to the issuing magistrate information concerning the reliability of the informant. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).
Searle relies heavily on the two-pronged test announced in the Aguilar v. Texas decision requiring: 1) that the affidavit indicate the underlying circumstances from which the informant concluded that the objects stolen were where he claimed they were, and 2) some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed was "credible" or his information "reliable".
Unquestionably the affidavit in the case at bar satisfactorily supplies information indicating that Searle had the stolen objects at his house where Pace had seen them. Thus, the first of the two-pronged Aguilar test is satisfied.
Significantly, Officer Sandesky's informer was not a confidential, unnamed informer. He was, instead, a named and non-professional informer who gave definite and detailed information relating to the stolen items. He was also in a position to repeat verbatim an incriminating admission by Searle in his presence. Pace's information, therefore, was based upon personal observation of the stolen objects, together with a declaration of the defendant that he was the thief, all of which pointed to the strong inference that Pace obtained his information in a "reliable" way. Draper v. U. S., 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). These factors formed a "substantial basis" for crediting the hearsay. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).
The leading United States Supreme Court cases, relied upon by defendant and referred to above, all involve situations where unknown professional informants were involved. Understandably, in those cases, the Court was concerned that there be a showing of the informer's credibility in order to forestall a search based upon an idle rumor or upon unfounded suspicion. An effort to solve the problem of the anonymous troublemaker giving information perhaps exaggerated or fabricated *1198 because of the promise of a reward was the aim of the two-pronged test of the Aguilar Case. United States v. Darensbourg, 520 F.2d 985 (5th Cir. 1975).
The rule growing out of these cases should not be applied as readily to an eyewitness such as Pace. An ordinary citizen complaining of a burglary would not usually be familiar to the police, or have had occasion to inform in the past. As a consequence his credibility could not be vouched for by the officer. The circumstances and facts of which he had knowledge, and which he disclosed in his complaint, would in most cases be the only information available to the officers or magistrate upon which his credibility could be determined.
Responding to a contention that the warrant was defective for want of a recital in the affidavit that the informant was known to be reliable, as Aguilar and Spinelli were claimed to require, the Second Circuit in United States v. Burke, 517 F.2d 377, held in 1975 that:
"Apart from the question of the precise standing of Spinelli after U. S. v. Harris, 403 U.S. 573, 581-83, 91 S.Ct. 2075, 29 L.Ed.2d 723 . . ., there has been a growing recognition that the language in Aguilar and Spinelli was addressed to the particular problem of professional informers and should not be applied in a wooden fashion to cases where the information comes from an alleged victim of or a witness to a crime. Indeed any other view would mean that, despite the 1972 amendment to F.R.Crim.P. 41(c) to the effect that "[t]he finding of probable cause may be based upon hearsay evidence in whole or in part,' it would generally be impossible to use hearsay statements of victims or witnesses since ordinarily they would not be previously known to the police." 517 F.2d at 380.
United States v. Bell, 457 F.2d 1231 (5th Cir. 1972) also stands for the general proposition ". . . that Aguilar and Spinelli requirements are limited to the informant situation only." It is significant to recall Chief Justice Burger's statement that the Aguilar informant-reliability rule applies to "an affidavit based solely on the hearsay report of an unidentified informant." (emphasis added). United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).
Defendant's contention is without merit.

Assignment 2
In his charge to the jury before they retired to deliberate the trial judge instructed:
"Article 432 of Title 15 sets forth the presumptions. A legal presumption relieves him in whose favor it exists from the necessity of any proof but may, nonetheless, be destroyed by rebutting evidence. They give some examples of presumptions in law. Such is the presumption. . . that the person in the unexplained possession of property recently stolen is the thief."
Defense counsel's objection to this charge was overruled, and the trial judge continued:
". . . The presumption concerning possession of stolen property has been extended in the case of state versus Shelby which states that unexplained possession of property recently stolen at the time of a burglary creates a presumption that the possessor committed the burglary."
Again, defense counsel's objection was overruled. He assigns these rulings as error. His objection is based upon several contentions. Section 432 of Title 15, he argues, does not specifically support such a legal presumption. There is a difference between theft and burglary, the argument runs, for burglary requires acts beyond the simple taking of something of value belonging to another, La.R.S. 14:67; it requires an unauthorized physical entry into *1199 a structure with a specific intent to commit a felony or theft therein. La.R.S. 14:62. While there may be some logic in a legal presumption that one found in the unexplained possession of recently stolen goods may have taken the goods, he asserts, the presumption should not be broadened to include both unauthorized taking and the unauthorized entry.
This contention is answered in State v. Shelby, 215 La. 637, 41 So.2d 458 (1949). There this Court said:
"Counsel for defendant contends that the recent possession of stolen goods does not create a presumption of guilt of the crime of simple burglary. He points out that Article 432 of the Code of Criminal Procedure provides that such possession creates a presumption of theft and contends that such possession does not create a presumption of burglary. The charge given by the trial judge was proper under the evidence in this case because there was no attempt made to explain the possession. It was denied that the defendant had possession of the property at any time. Under the charge it was incumbent upon the State to prove an intent to steal or an intent to commit a forcible felony because simple burglary is an unauthorized entering with such intent. The recent possession of property taken at the time of the burglary creates a presumption that the property was stolen. Such being the case, it would at the same time create a presumption that the defendant was guilty of the burlary because the property was stolen at the time of the unauthorized entering.. . .'
The other argument advanced in support of the defense contention asserts that this legal presumption has the effect of reversing defendant's constitutionally granted right against self-incrimination by compelling him to meet the presumption head on and endeavor to overcome the same by explaining his possession.
This argument is not well-founded.
The presumption referred to in Section 432 is a presumption of factnot a presumption of law. See State v. Pace, 183 La. 838, 165 So. 6 (1935). It does not no more than to make possession of the prohibited article prima facie evidence of guilt. It leaves the accused entirely free to testify or not as he chooses. If the accused happens to be the only repository of the facts necessary to negative the presumption arising from his possession, that is a misfortune which the statute does not create but which is inherent in the case. Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925). See also United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); State v. Curry, 319 So.2d 917 (La.1975); State v. Womack, 283 So.2d 708 (La.1973); State v. McQueen, 278 So.2d 114 (La.1973).

Assignment 3
Searle argues that the conviction should be reversed because in the prosecutor's closing argument he told the jury, in effect, that unless they convicted Searle of burglary in the cases before them he could not later be charged with receiving stolen things. This was an erroneous statement of law, according to defense counsel, for double jeopardy would not attach to a charge of receiving stolen things, La.R.S. 14:69, after an acquittal of the charge of simple burglary, La.Code of Crim.Proc. art. 596, and, therefore, Searle could thereafter be prosecuted for receiving stolen things.
The prosecutor answers this contention by an argument that double jeopardy would apply and by pointing out that his argument was made in rebuttal of the defense plea to the jury in which defense counsel declared that he wouldn't be surprised if Searle was charged with "receiving stolen things" if he was acquitted of this burglary.
Since the defense complaint that the prosecutor misstated the law to the jury does not fall within one of the specified *1200 grounds authorizing mistrial, La.Code Crim.Pro. arts. 770 and 775, it must be considered as possibly within the general mandate that a mistrial be granted ". . . when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial. . . ." La.Code Crim.Pro. art. 775.
Our conclusion is that the grounds advanced by the defense does not fall within the general mandate.
Leaving aside the merits of the respective contentions of the defense and the State on the question of double jeopardy, the prosecutor was entitled to answer the question of law advanced in the defense plea to the jury. If, in his effort to do so, the prosecutor erred on the question of law at issue, this error would not furnish grounds for setting aside this conviction. He is not held to infallibility in the law. State v. Viator, 246 La. 809, 167 So.2d 374 (1964); State v. Stahl, 236 La. 362, 107 So.2d 670 (1959); State v. Wren, 121 La. 55, 46 So. 99 (1908). And the jury is instructed to take the law from the judge, not opposing counsel. Before a verdict is set aside on the ground of improper argument, this Court must be thoroughly convinced that the jury was in some manner influenced by the remarks and that the remarks contributed to the verdict. State v. Dennis, 250 La. 125, 194 So.2d 720 (1967); State v. Jackson, 227 La. 642, 80 So.2d 105 (1955). No such showing has been made here.
For the reasons assigned, the conviction and sentence are affirmed.
TATE, J., dissents and assigns written reasons.
DIXON, J., concurs.
CALOGERO, J., dissents and assigns reasons.
DENNIS, J., dissents for reasons assigned by CALOGERO, J.
TATE, Justice (dissenting).
I respectfully dissent, believing that assignment of error two has merit. The assignment was taken to the trial court's charge, insofar as the court charged the jury that one in unexplained possession of recently stolen property is a burglar. The defendant was convicted of burglary.
La.R.S. 15:432 provides: "A legal presumption relieves him in whose favor it exists from the necessity of any proof * * *." One of the traditional and common-sense presumptions recognized by the statute is that "the person in the unexplained possession of property recently stolen is the thief".
Theft is the taking of anything of value without the consent of the owner. La.R. S. 14:67. Burglary is not the taking or thieving of property, it is the unauthorized entering of the structure with intent to commit a felony or theft. La.R.S. 14:60, 62. Burglary is much more severely punishable than theft.
Under La.R.S. 15:432, no evidence at all is necessary to prove an unauthorized entry on the part of an accused, if indeed his mere unexplained possession of stolen property is proved. This holding goes far beyond the terms of the statute.
It is proper to charge the jury that, as a matter of law, one in unexplained possession of stolen property is the thief, thus allowing the factual argument to the jury that it may find, in conjunction with other evidence, that the accused committed a burglary to obtain it. But to charge that from the theft the jury must also presume as a matter of law (without further evidence) the burglary, is to mandate (without evidence as to the essential elements of a burglary by the accused) a conviction of the more serious offense of burglary (unauthorized entry), simply upon proof (by presumption) of a theft.
It is true that the language in State v. Shelby, 215 La. 637, 41 So.2d 458 (1949) seems to permit the charge. However, the *1201 actual charge in Shelby merely permitted the jury to make the factual presumption (in the form of a deduction), not to require it. Furthermore, in our later opinion of State v. Vaufman, 278 So.2d 86 (La. 1975), we specifically disapproved the use of the presumption of theft to be broadened into a presumption that an accused also committed a greater crime which included the theft (a presumption, to repeat, which relieves the state of the necessity of producing any evidence that the accused committed the additional essential elements of the greater crime).
In the present case, this erroneous charge was obviously prejudicial. The jury returned to the courtroom, after retiring to deliberate, for the specific purpose of being sure it understood this presumption. The accused might, for instance, have stolen the property, without committing a burglary to do so.
For these reasons, therefore, the writer dissents.
CALOGERO, Justice (dissenting).
I respectfully dissent from the majority's affirmance of defendant Searle's conviction and sentence. Although I believe that assignments of error numbers one and three also present serious questions, I would reverse the conviction on the basis of assignment of error number two.
Defendant argues in his second assignment of error that the trial judge erred when he instructed the jury that, under Louisiana law, there exists a legal presumption that one found in the unexplained possession of recently burglarized items is presumed by the law to be the burglar. This charge was erroneous.
The Louisiana Constitution of 1974, for the first time in this state, raised the presumption of innocence to constitutional magnitude. La.Const. art. I, ¶ 16. The practical effect of this change may be to make unconstitutional the use by the state of a presumption which encourages, if not requires, a defendant to take the stand in order to disprove his guilt. See 35 La.L. Rev. 51 (1974). Because even the simple presumption that the person in possession of stolen property is a thief may violate the new constitutional provision, but primarily because the dual presumption (that a person in possession of property recently taken in a burglary is presumed to be not only the thief but the burglar as well) is not sanctioned by our law, as Justice Tate so ably notes in his dissent, I must dissent. At a minimum the trial court's instruction was erroneous and the conviction should be reversed.

ON REHEARING
DENNIS, Justice.
Frank J. Searle III was convicted by a jury of simple burglary. We granted a rehearing to consider the constitutional validity of our judicially created rule that when a defendant is found in the possession of property recently stolen in a burglary he must be presumed to be guilty of the burglary unless his possession is explained or the presumption is otherwise rebutted.
On July 6, 1974, police officers conducted a search under warrant of the house where the defendant resided with his parents in Baton Rouge. During the search they discovered property which somehow had been removed from another house in the same city. Other than his possession of the property the record is devoid of evidence linking defendant to the burglary. There was little, if any, evidence to explain how the property was removed from its rightful location.[1]
*1202 On numerous occasions during the trial the court instructed and allowed the assistant district attorney to tell the jury that a person in the unexplained possession of property recently stolen at the time of a burglary is presumed to have committed the burglary.[2] The instructions and remarks of which defendant complains were based upon La.R.S. 15:432 which, in pertinent part, provides:
"A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; such is the presumption attaching to the regularity of judicial proceedings; * * * that the person in the unexplained possession of property recently stolen is the thief; * * *."
We have on a number of occasions in the past judicially amended this rule by approving trial judges' instructions applying the presumption to crimes other than theft. See State v. Curry, 319 So.2d 917 (La. 1975) (simple burglary); State v. Carter, 301 So.2d 612 (La.1974) (simple burglary); State v. Grant, 295 So.2d 168 (La.1973) (favorable dictum; armed robbery); State v. McQueen, 278 So.2d 114 (La.1973) (simple burglary); State v. Braxton, 257 La. 183, 241 So.2d 763 (1970) (armed robbery); State v. White, 247 La. 19, 169 So. 2d 894 (1964) (simple burglary); State v. Shelby, 215 La. 637, 41 So.2d 458 (1949) (simple burglary); State v. Pace, 183 La. 838, 165 So. 6 (1935) (breaking and entering in the nighttime).
In State v. Kaufman, 278 So.2d 86, 98 (La.1973), however, we expressly rejected an attempt to extend the rule so as to effectuate an instruction to jurors "that if property is stolen during the commission of a homicide, the unexplained possession of property stolen in a homicide, the possessor unexplainedly is presumed to have committed the homicide."
Although our previous treatment in State v. McQueen, supra, of the issue raised by defendant was thoughtful and not without merit, we have concluded after further consideration of the authorities discussed therein, the more recent decisions of the United States Supreme Court, and our decision in State v. Kaufman, supra, that the extensions of the presumption we have approved in the past without legislative authorization were unconstitutional, unwise and must be overruled.
It is now clear that the due process requirement of the federal constitution obliges the prosecution to prove beyond a reasonable doubt every fact necessary to constitute the crime charged. In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L. Ed.2d 368 (1970), and that, accordingly, a state may not shift the burden of ultimate persuasion of an essential element of the crime charged to the defendant in a criminal case. Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).
Louisiana has adopted these same principles, by guaranteeing criminal defendants due process of law, the presumption of innocence until proven guilty, the right to remain silent, the right against self-incrimination, and right to an impartial trial. La.Const. of 1974, Art. I, §§ 2, 13, 16.
*1203 In view of the newly emphasized requirement of proof beyond a reasonable doubt of every essential element necessary to constitute the crime with which a defendant is charged it would be appropriate for the legislature to reexamine all criminal presumptions. For example, is it as rational to presume in 1976 that a person in the recent and unexplained possession of stolen goods is the thief as it was in 1928 when La.R.S. 15:432 was enacted? Since then society has changed and constitutional rights have evolved, particularly the right to remain silent under police questioning as well as in court. The constitutionality of a presumption should be judged at the time it is applied and not as of the time it was enacted. Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973).
Assuming the rational validity of the presumption, La.R.S. 15:432 is nevertheless so indefinite in some respects that it easily lends itself to unconstitutional application, depending upon the trial judge's use of it in articulating his jury instructions. The words "unexplained possession" in the statute have been interpreted to have no reference to the defendant's failure to explain to the police or his failure to take the stand at trial, thus saving the statute from being unconstitutional on its face. State v. Womack, 283 So.2d 708 (La. 1973); State v. McQueen, 278 So.2d 114 (La.1973). Nevertheless, if the meaning of the presumption as conveyed to the jury by an instruction in a particular case is that the defendant must personally explain his possession of the stolen property to the police or to the jury, reversible error will have been committed. See La.Const.1974, Art. I, §§ 1, 13, 16; cf. Doyle v. Ohio, 426 U.S. ___, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), United States v. Hale, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975). Additionally, the statute cannot be interpreted to mean, or a jury led to believe, that the defendant must do anything other than produce some evidence contrary to or, at most, create a reasonable doubt as to the presumed fact in order to destroy the presumption. Otherwise, the ultimate burden of persuasion upon an essential element of the crime would be shifted by the presumption to the defendant in violation of federal and state constitutional principles. Fifth and Fourteenth Amendments to the United States Constitution; La. Constitution of 1974, Art. I, §§ 2, 13, 16; Mullaney v. Wilbur, supra; In re Winship, supra. We do not need, however, to resolve these difficulties in the present case because we are not confronted here with the issue of the constitutionality of the statute or its application but primarily with the constitutionality of a judicial extension of the statutory presumption.[3]
In Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), the United States Supreme Court, in holding unconstitutional a statutory presumption that a person found in possession of marijuana also had knowledge that it had been illegally imported, stated that "* * * it was incumbent upon the prosecution to demonstrate that the inference was permissible before the burden of coming forward could be placed upon the defendant, * * *" 395 U.S. at 45, 89 S.Ct. at 1553, 23 L.Ed.2d at 87, and "* * * that it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend. * * *" 395 U.S. at 36, 89 S.Ct. at 1548, 23 L.Ed.2d at 82. However, in footnote 64 of that opinion, the high court pointedly remarked "* * * we need not reach the question whether a criminal presumption which passes muster when so judged must also satisfy the criminal `reasonable doubt' standard if proof of the crime charged or an essential element *1204 thereof depends upon its use. * * *" Id. In Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), reh. den. 397 U.S. 958, 90 S.Ct. 939, 25 L. Ed.2d 144 (1970), the Court sustained a presumption that one in possession of heroin had knowledge of its illegal importation by stating that it met both the more-likely-than-not standard and the reasonable-doubt test. The Court invalidated a similar presumption regarding cocaine, stating it could not be sustained even under the more-likely-than-not standard.
Later, the United States Supreme Court in Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), a case involving a prosecution for possession of treasury checks stolen from the mails, upheld a jury instruction that:
"* * * `[p]ossession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you may reasonably draw the inference and find, in the light of the surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen.'" 412 U.S. at 839-40, 93 S.Ct. at 2360, 37 L.Ed.2d at 384.
Mr. Justice Powell, for the Court, stated:
"The teaching of the foregoing cases [Turner v. United States, supra; Leary v. United States, supra; United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L. Ed.2d 658 (1965); Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed.2d 1519 (1943)] is not altogether clear. To the extent that the `rational connection,' `more likely than not,' and `reasonable doubt' standards bear ambiguous relationships to one another, the ambiguity is traceable in large part to variations in language and focus rather than to differences of substance. What has been established by the cases, however, is at least this: that if a statutory inference submitted to the jury as sufficient to support conviction satisfies the reasonable-doubt standard (that is, the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt) as well as the more-likely-than-not standard, then it clearly accords with due process." 412 U.S. at 843, 93 S.Ct. at 2361-62, 37 L.Ed.2d at 386.
After Leary, Turner and Barnes, many lower federal and state courts which have considered the issue have decided that the "beyond a reasonable doubt" test must be applied to determine if a criminal presumption meets constitutional due process requirements.
In United States v. Johnson, 140 U.S. App.D.C. 54, 433 F.2d 1160 (1970), the Court stated:
"* * * [B]ecause proof beyond a reasonable doubt is itself an indispensible ingredient of due process in criminal cases, a rule of inference `which passes muster when so judged [by the morelikely-than-not standard] must also satisfy the criminal "reasonable doubt" standard if proof of the crime charged or an essential element thereof depends upon its use.' This latter, in such circumstances, imposes in turn the requirement that the inference authorized, standing alone, possess such potency that a jury could prudently accept it as proof of guilt to a moral certainty." 433 F.2d at 1168.
In United States v. Carter, 173 U.S. App.D.C. 54, 522 F.2d 666 (1975), the Court, relying on Leary v. United States, supra, Tot v. United States, supra, and United States v. Romano, supra, reached the following conclusion:
"* * * While an inference of theft by a defendant may logically follow from the circumstance of his unexplained possession of recently stolen items, that same logic does not necessarily support extension of the inference to other offenses. For an inference to be valid under established principles of *1205 criminal law, the presumed fact must, beyond a reasonable doubt, flow from the proved facts on which the inference depends." 522 F.2d at 679. (Emphasis theirs.)
In footnote 48, the Court stated:
"* * * In Tot v. United States, supra, the Court, in articulating the due process mandates for a statutory presumption stated that `[t]he jury is permitted to infer from one fact the existence of another essential to guilt, if reason and experience support the inference' 319 U.S. at 467, 63 S.Ct. at 1244. We have held that the connection between the inferred fact and the proved fact must meet the reasonable doubt standard, in order for the inference instruction to be permissible. * * *" 522 F.2d at 680.
In State v. Odom, 83 Wash.2d 541, 520 P.2d 152 (1974), the Court stated:
"In Wilbur v. Mullaney, 473 F.2d 943, 948 (1st Cir. 1973), the court struck down a presumption that malice is presumed from an intentional killing, noting that while a presumption `might, conceivably, be justified if based upon a fact which, if found beyond a reasonable doubt, also compels the inference beyond a reasonable doubt . . . no one could suggest such in this case.'
"The application by the United States Supreme Court of the beyond a reasonable doubt standard as an alternative in Leary and Turner, and its subsequent application in Johnson and Wilbur, are persuasive to us that this is the appropriate standard to apply in this case." 520 P.2d at 156.
See also, United States v. Black, 512 F.2d 864 (9th Cir. 1975); Dinkins v. State, 29 Md.App. 577, 349 A.2d 676 (1976); State v. Williams, 288 N.C. 680, 220 S.E.2d 558 (1975); Ashford and Risinger, Presumptions, Assumptions and Due Process in Criminal Cases: A Theoretical Overview, 79 Yale L.J. 165 (1969); McCormick on Evidence, § 344, at p. 816 (2d ed. 1972) ("* * * [T]he Court's frequent reference that [beyond a reasonable doubt] standard in Turner, coupled with its decision in In re Winship recognizing that such a measure of proof is constitutionally required in criminal cases, makes it likely that the reasonable doubt standard will be applied to test the validity of presumptions in the future." (footnotes omitted)). Some courts, however, have chosen to apply the more-likely-than-not standard. E. g., People v. McClendon, 533 P.2d 923 (Colo.1975); Pinkerton v. Farr, 220 S.E.2d 682 (W.Va.1975). Other courts have not decided which test they will apply pending resolution of the question by the United States Supreme Court. E. g., United States v. Tavoularis, 515 F.2d 1070, n. 10 (2d Cir. 1975).
We agree with the courts which have held that in order to sustain the use of a presumption to prove the crime charged or an essential element thereof it is incumbent upon the prosecution to demonstrate that the presumed fact must beyond a reasonable doubt flow from the proven fact on which it is made to depend. Because the presumption relieves the State of proving beyond a reasonable doubt an essential element of the crime it would be a denial of due process under both our state and federal constitutions to allow a defendant to be convicted upon the basis of a presumed fact which could not beyond a reasonable doubt be inferred from proven facts. In other words, before a jury can be told that if it finds one proven fact it must presume that another is true, the inference must be one which reasonable minds beyond a reasonable doubt could draw from the proven fact. We are all the more persuaded that this is the appropriate standard to apply in the instant case because we are dealing here with a presumption which has not withstood the test of legislative examination but was adopted judicially after contemplation of its application to a limited number of particular factual situations.
*1206 In the instant case the jurors were told, in effect, if the State proved beyond a reasonable doubt that Frank Searle was in the unexplained possession of recently burglarized property it must presume that he committed the burglary. In order to prove the crime of burglary the State is required to prove beyond a reasonable doubt that the culprit made an unauthorized entry of a structure with the intent to commit a theft or a felony. See La.R.S. 14:60, 14:62. Thus, the essential question presented is whether or not reasonable minds could, after finding beyond a reasonable doubt from the evidence that a person was in the possession of recently burglarized property, infer in the absence of any other evidence that beyond a reasonable doubt that person made an unauthorized entry of the structure from which the property was taken with an intention to commit a theft or felony. In the absence of a demonstration by the prosecution with empirical evidence that the presumption is permissible, see Leary, supra, and Turner, supra, the question must be answered in the negative. Aside from the obvious possibility that the person in possession of the property may have received it from a third person, either with or without knowledge it had been stolen, there is the additional possibility that, if the same person made an entry of the structure, he did not do so without authorization, and finally there is the possibility, albeit slight, that if he made an unauthorized entry he did not have the intent to commit a theft or felony when he entered. Therefore, we hold that our judicially created presumption that a defendant found in possession of property recently stolen in a burglary is presumed to have committed the burglary does not meet the beyond-a-reasonable-doubt standard, and that defendant consequently was adjudged guilty without requiring that the State prove beyond a reasonable doubt every essential element of the crime charged.
Accordingly, the defendant's conviction and sentence are reversed and this case is remanded to the trial court for a new trial and other proceedings consistent with the views herein expressed.
Reversed and remanded for a new trial.

APPENDIX
Over defendant's objection, the prosecuting attorney was allowed to address the jury during his voir dire examination as follows:
"As I was saying, there is a presumption under our law that says or provides that when a person is found in the unexplained possession of property recently stolen, the law presumes that that person is the thief. Of course, it is a question for you to determine these facts, you know, as a juror, the fact that property was stolen, the fact that that property thereafter, shortly thereafter, was found in the possession of a party, and that that possession was either unexplained or was explained in a matter that would not be acceptable by you as a legitimate explanation. * * *"
After a prospective juror, who was asked if she could accept and apply that kind of law, seemed to have trouble grasping the assistant district attorney's explanation the trial judge joined him in addressing the witness:
"If your car was parked downtown and you got back to get in your car and it was gone and the police stopped me a few block [sic] down the street. I'm driving your car. Now, unless I can explain how I happened to be driving your car, the presumption is that I stole your car. Now, if I can say, well, look, I have a car just like this car; it was parked in that same block, and I just made a mistake; and we go back and find that that's true, then I would have explained it to your satisfaction. I didn't intend to steal your car and made *1207 a mistake. But the presumption is that the unexplainedit must be in the unexplained possession of property recently stolen. Now, there are a lot of things that could happen; but if there's no explanation of my possessing your car, then I'm presumed to be the thief, you see.
A. Yes.
"THE COURT: All right.
"[THE PROSECUTOR]:
"Q. And, of course, you understand that unexplained doesn't necessary [sic] mean standing mute. I mean, the party might offer an explanation that is not acceptable to you. You understand that?
"A. Yes.
"Q. Now, cancould you accept and apply that kind of law?
"A. Yes.
"Q. You could? All right. Now, of course, this is a burglary charge as you've been told. It's not a theft charge, and it's not a facttheft is not even a requirement in burglary because burglary is the unauthorized entry into a place accompanied with the intent to steal. You don't actually have to steal; but when a theft is in fact committed in a burglary or where you have an unauthorized entry, then in order to prove the intent to steal, we prove the actual theft because, you know, naturally your intent precedes the execution of the act. You understand that?
"A. Yes.
"Q. So that rule, that presumption, is also been held to apply to a burglary. If property is, in fact, stolen during a burglary, then a party who is found in the unexplained possession of property recently stolen in the burglary is presumed to have committed the burglary."
The assistant district attorney repeated the question, using the judge's example later during his voir dire examination, over the defendant's objection:
"Q. There's a presumption in our law that says that a person who is found in the unexplained possession of property recently stolen is presumed to be the thief. In other words, if you havefor example, using the example the Judge gave about the automobile. Were you able to hear that?
"A. Yes.
"Q. Well, if somebodyif you went to the movie and when you came out, your car was gone from where it was parked and it was found, say, in my possession and I did not explain my possession maybe I just stood mute and said nothing or maybe I gave an explanation that a juror would not accept as being reasonable. . ."
In his opening statement the State's attorney made the following comments which were objected to by the defendant:
"* * * The presumption the State intends to rely on is one found in Title 15, Article 432, which states, among other things, that a person who is found in the unexplained possession of property recently stolen is the thief. This is a presumption in favor of the State. This presumption runs in favor of the State and, therefore, it is incumbent upon the person to whom it runs against to come forward and explain the possession. So it requires an explanation of possession of this property. The State will show that this property was found shortly after the burglary. No reasonable explanation was given; therefore, he was charged with these burglaries. * * *"
In his closing argument, the assistant district attorney, over defendant's objection, was allowed to argue:

*1208 "You will also be called upon to decide in your role as jurors, and under the oath that you have taken as jurors, a portion of our law known as legal presumption. On these presumptions, as I've stated to you at the start of this case, and one on which the State is relying upon is that person found in the unexplained possession of property recently stolen is presumed to be the thief. This presumption has been extended jurisprudentially by our Courts to say that a person found in the unexplained possession of property recently stolen in a burglary is presumed to be that burglar. The reason for this presumption is essentially that, as I've told you, the nature of crime, you're not going to have eye-witnesses in most instances. The nature of crime is to evade conviction. You're not going to do it when people are around. Therefore, the State authorities must rely on the circumstances of the situation. Being in the possession of recently stolen property without having an explanation for your possession is circumstantially proof presumption that you stole that property. Now, the unexplained possession, you and I can think of numerous situations where you would have possession of property that is not yours where you'd have an explanation for. This presumption just carries forward with an idea, where there's no explanation to the investigating officers of that possession, the presumption holds. * * *" The trial court instructed the jury as follows:
"* * * A legal presumption relieves him in whose favor it exits [sic] from the necessity of any proof but may, nonetheless, be destroyed by rebutting evidence. They give some examples of presumptions in law. Such is the presumption attaching to the regularity of judicial proceedings, that the grand jury was legally constituted, that public officers have done their duty, that a relation or subject matter once established continues but not that it preexisted, that the defendant intended the natural and probable consequences of his act, that the defendant is innocent, that the defendant is sane and responsible for his actions, that the person in the unexplained possession of property recently stolen is the thief.
"That evidence under the control of a party and not produced by him was not produced because it would not have aided him and that the witnesses have told the truth. The presumption concerning possession of stolen property has been extended in the case of State versus Shelby which states that unexplained possession of property recently stolen at the time of a burglary creates a presumption that the possessor committed the burglary."
The defendant's objection to the judge's charge was overruled.
After the jury retired it deliberated for one hour and twenty-five minutes and returned to the courtroom to request additional instructions. One such request produced the following colloquy:
"FOREMAN:
"On the presumption that the person having stolen merchandise possession. . .
"THE COURT:
"Yes, sir.
"FOREMAN:
"Well, it's just the presumption of guilt? Is he presumed to be the theft or . . .
"THE COURT:
"Article 442, 432 of the Code, Title 15, says a legal presumption relieves him in whose favor it exists from the necessity of any proof. One example of that is the presumption of innocence, which means that the defendant doesn't have to prove he's innocent. There are other presumptions. The presumption that a *1209 person in the unexplained possession of property recently stolen is the thief is the presumption that lies in favor of the State, and it's a rebuttable presumption. The case of State versus Shelby, the State Supreme Court says that unexplained possession of property recently stolen at the time of a burglary creates a presumption that the possessor committed the burglary. That has also, of course, been extended to cover armed robberies. * * *"
Following the additional instructions the jury retired for one hour and thirty minutes, but returned to ask the judge if it was necessary that it "come up with a verdict." The judge informed the jury that he wanted it to reach a verdict if possible but that he would declare a mistrial if it was unable to do so.
SANDERS, C. J., dissents with written reasons.
SUMMERS, J., dissents with written reasons.
MARCUS, J., dissents.
SANDERS, Chief Justice (dissenting).
LSA-R.S. 15:432 provides:
"A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; such is the presumption attaching to the regularity of judicial proceedings; . . . that the person in the unexplained possession of property recently stolen is the thief: . . ."
In a long series of cases beginning in 1935, we have held that when the evidence establishes that the theft was committed during a burglary, a rebuttable presumption arises that the person in unexplained possession of the recently stolen property is the burglar. See State v. Curry, La., 319 So.2d 917 (1975); State v. Carter, La., 301 So.2d 612 (1974); State v. Grant, La., 295 So.2d 168 (1973); State v. McQueen, La., 278 So.2d 114 (1973); State v. Braxton, 257 La. 183, 241 So.2d 763 (1970); State v. White, 247 La. 19, 169 So.2d 894 (1964); State v. Shelby, 215 La. 637, 41 So.2d 458 (1949); State v. Pace, 183 La. 838, 165 So. 6 (1935).
The weight of authority elsewhere supports this holding. See Rueda v. People, 141 Colo. 504, 348 P.2d 958 (1960); Peoples v. State, Okla.Cr., 270 P.2d 380 (1954); State v. Saba, 139 Me. 153, 27 A.2d 813 (1942); Gunter v. State, 79 Ark. 432, 96 S. W. 181 (1906); Roberson v. State, 40 Fla. 509, 24 So. 474 (1889); Dedrick v. State, 210 Ind. 259, 2 N.E.2d 409 (1936); State v. Badgley, 140 Kan. 349, 37 P.2d 16 (1934); State v. Wyre, Mo., 87 S.W.2d 171 (1935); Annot., Burglary "Exclusive" Possession, 51 A.L.R.3d 727.
Today, the majority overrules our decisions and holds that in a burglary case the rebuttable presumption violates the constitutional requirement that the prosecution prove the crime beyond a reasonable doubt. See In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
I disagree. United States Supreme Court decisions establish standards for determining the constitutionality of presumptions. A presumption is clearly unconstitutional if it cannot be said with substantial assurance that the presumed fact is more likely than not to flow from the proven fact on which it depends. Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). However, a presumption is clearly constitutional if the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt. Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973). The area between these two standards is a twilight zone. Pending additional decisions in this twilight zone, the cautious approach is to use the reasonable-doubt standard.
LSA-R.S. 15:432 refers to the possessor concept as a legal presumption. The decisions of this court have described the concept as a presumption of fact (See State v. Pace, supra) and as an inference (See State v. Thompson, 137 La. 547, 68 So. 949 (1915)). An examination of the decisions demonstrates, I think, that the presumption has been applied as a standardized inference *1210 of fact. See, e. g., State v. McQueen, supra; 21 Loyola L.Rev. 399-400.
The rationale of the concept in burglary prosecutions can be summarized thusly: When it is shown that a person was in possession of recently stolen property, it may be inferred that the possessor stole the property and, if it is shown that the property was stolen from a certain place at a certain time under certain circumstances, that the possessor stole the property from that place at that time and under those circumstances. Thus, if it is established that the theft occurred during a burglary, an inference can be made that the possessor stole the property in the burglary.
The possessor concept, being a rule of circumstantial evidence, does not shift the burden of proof. As always, the State is required to prove the elements of the crime beyond a reasonable doubt, and the jury is so instructed. LSA-C.Cr.P. Art. 804; State v. Nix, 211 La. 865, 31 So.2d 1 (1947).
As early as 1913, in McNamara v. Henkel, 226 U.S. 520, 33 S.Ct. 146, 57 L.Ed. 330, the United States Supreme Court applied the presumption in a burglary case, stating:
"It is objected that while possession of property recently stolen may be evidence of participation in the larceny, the apparent possession of the automobile by the appellant affords no support for a conclusion that he committed the burglary, the crime with which he was charged. The permissible inference is not thus to be limited. The evidence pointed to the appellant as one having control of the car and engaged in the endeavor to secure the fruits of the burglarious entry. Possession in these circumstances tended to show guilty participation in the burglary. This is but to accord to the evidence, if unexplained, its natural probative force. Considine v. United States, 50 C.C.A. 272, [6 Cir.] 112 F. 342, 349, 350; Com. v. McGorty, 114 Mass. 299; Knickerbocker v. People, 43 N.Y. 177, 181; Neubrandt v. State, 53 Wis. 89, 9 N.W. 824; State v. Fitzgerald, 72 Vt. 142, 47 Atl. 403, 14 Am. Crim.Rep. 173."
The presumed fact, that the possessor stole the property in the burglary, has a rational connection with the proven facts of possession, status of the property as stolen, the recency of the taking, and the circumstances under which it was taken. If these facts are adequately established, the inference satisfies the reasonable-doubt standard. Assuming, however, that it falls in the twilight zone of the United States Supreme Court decisions, I am still of the opinion that it does not offend due process.
In Barnes v. United States, supra, the United States Supreme Court upheld an instruction that the jury could infer that a possessor of recently stolen property knew that the property had been stolen. The court, applying the reasonable-doubt standard, held that the inference of guilty knowledge had no constitutional infirmity.
Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925), dealt with a statute prohibiting the concealment of opium knowing it to have been illegally imported. The statute provided that "`such possession shall be deemed sufficient evidence to authorize conviction unless defendant shall explain the possession to the satisfaction of the jury.'" The United States Supreme Court upheld the constitutionality of the statute, stating that the statute did no more than make possession of the prohibited article "prima facie evidence of guilt."
In Cupp v. Naughten, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), the United States Supreme Court, in upholding the constitutionality of a jury instruction that every witness is presumed to speak the truth, stated:
"Certainly the instruction by its language neither shifts the burden of proof nor negates the presumption of innocence accorded under Oregon law. It would be possible perhaps as a matter of abstract logic to contend that any instruction *1211 suggesting that the jury should believe the testimony of a witness might in some tangential respect `impinge' upon the right of the defendant to have his guilt proved beyond a reasonable doubt. But instructions bearing on the burden of proof, just as those bearing on the weight to be accorded different types of testimony and other familiar subjects of jury instructions, are in one way or another designed to get the jury off dead center and to give it some guidance by which to evaluate the frequently confusing and conflicting testimony which it has heard. The well-recognized and long-established function of the trial judge to assist the jury by such instructions is not emasculated by such abstract and conjectural emanations from Winship."

The majority misconstrues the decision of the Colorado Supreme Court in People v. McClendon, Colo., 533 P.2d 923 (1975) as applying the more-likely-than-not standard. Actually, the court in that case applied the Barnes reasonable-doubt test to the identical issue now before us and, in my opinion, correctly held that the possessor presumption in a burglary case did not violate the due process clause.
Speaking through Justice Erickson, the Colorado Supreme Court stated:
"In Barnes v. United States, supra, the Supreme Court sustained the constitutionality of a common-law presumption against the challenge that it contravened the defendant's rights under the due process clause. The Court concluded that if the evidence necessary to invoke the inference was `sufficient for a rational juror to find the inferred fact beyond a reasonable doubt,' and if the `presumed fact is more likely than not [based on common sense and experience] to flow from the proved fact on which it is made to depend,' then the dictates of the due process clause are satisfied. Accord, Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965).
"The presumption set forth in the contested instruction meets the standards established by the Supreme Court of the United States. There is more than a possibility, and, in fact, a high probability, that the defendant, who was in recent possession of property stolen from Daniel's residence, and who was arrested near the scene of the burglary shortly after the burglary occurred, entered Daniel's house with the intent to commit a crime. 1971 Perm.Supp., C.R.S.1963, 40-4-203; section 18-4-203, C.R.S.1973.
"In our view, the court properly instructed the jury and did not infringe upon domain which falls within the protective ambit of the due process clause. The presumption approved by this court cannot be construed to violate the defendant's constitutional right against self-incrimination. Although the presumption requires a defendant to rebut the permissible inference which the rational juror may draw, the defendant is not forced thereby to take the witness stand, but may, without adverse consequences, rely instead on evidence independent of his own testimony. See Ashford & Risinger, Presumptions, Assumptions, and Due Process in Criminal Cases, 79 Yale L.J. 165 (1969); Comment, Due Process Requirements for Use of Non-Statutory Inferences in Criminal Cases, 1973 Wash.U.L.Q. 897; Comment, Statutory Criminal Presumptions: Reconciling the Practical With the Sacrosanct, 18 U.C.L.A.L.Rev. 157 (1970); Note, The Unconstitutionality of Statutory Criminal Presumptions, 22 Stan.L. Rev. 341 (1970)."
Only three years ago, we upheld the constitutionality of the present presumption in State v. McQueen, supra. It is an ancient concept, deeply imbedded in the law of most states. The presumption accords to the evidence its natural probative force. I see no reason to alter the jurisprudence *1212 holding it constitutional. If the presumption is constitutional in a prosecution for theft, as the majority intimates, it is no less constitutional in a prosecution for burglary.
For the reasons assigned, I respectfully dissent.
SUMMERS, Justice (dissenting).
I dissent for the reasons assigned in the dissenting opinion of the Chief Justice.
NOTES
[1] Officer Robert J. Sadesky, of the Baton Rouge City Police Department, testified on redirect examination during the State's rebuttal that the defendant claimed to have borrowed the items belonging to Pace which were found in his possession, and to have purchased from Bruce Johnston for $110 the items taken from the Atkinson residence.

The jury acquitted defendant of burglary of the Pace property.
Jeff Gerald, a contemporary of the defendant, was called to testify in Searle's behalf. On recross-examination by the State he testified that Searle told him he had purchased the stereo system later determined to have been stolen from the Pace home. Gerald said Searle did not identify the person from whom the stereo was purchased.
It is not relevant, however, whether the jury had sufficient circumstantial evidence on which to base a finding that defendant committed an unauthorized entry with the requisite criminal intent. We would have no way of knowing to what extent the jury based its finding on the evidence or upon the presumption. Nevertheless, the paucity of evidence of the actual burglary in this case impresses us with the need to reexamine the criminal presumption used herein.
[2] See the appendix at the conclusion of this opinion.
[3] Although we do not reach the issues, we note that remarks to the jury by both the judge and the assistant district attorney may have amounted to unconstitutional commentary upon defendant's failure to take the stand and his election to remain silent under post-arrest police interrogation.