308 So.2d 763 (1975)
STATE of Louisiana
v.
Jewel SPOTVILLE.
No. 55463.
Supreme Court of Louisiana.
February 24, 1975.
*764 Robert J. Zibilich, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
The defendant Jewel Spotville was convicted of aggravated rape in violation of La.R.S. 14:42. He was found "guilty without capital punishment and without benefit of parole, probation, commutation or suspension of sentence." He was subsequently sentenced to serve his "natural life without benefit of probation, pardon, parole, suspension or commutation of sentence." He perfected two bills of exceptions upon which he relies for a reversal of his conviction.
Bill of Exceptions No. 1.
Bill of Exceptions No. 1 was reserved when the trial court, after taking evidence on the predicate, allowed the prosecutor to attempt to impeach Charles Jackson, a State witness. The State had called Jackson to the witness stand and had attempted to question him concerning what he had seen while on his porch across from the victim's house around the time of the commission of the crime (the early morning of March 7, 1973). Jackson had presumably given a signed statement to police officers on March 8, 1973, the day after the commission of the crime, in which he said that during the early morning hours of March 7 he saw the accused, known to him as "Jap," and two other men go through a window into the victim's house; that after they came out he observed the victim run out of the house and down the street; that later the victim and her sister told him what had happened and he informed them that he had seen the men and would tell the police; and that subsequently one of the three men, Dooley, told him that if he told anything he would be killed.
When questioned at the trial, Jackson told a different story and insisted that he had seen no one enter or leave the victim's *765 house and had not recognized the three men whom he had seen standing in front of the victim's house.
The defendant, in support of his objection to the Court's ruling allowing the State to attempt to impeach the witness, argued that the State had not sufficiently shown that they were surprised by the witness' testimony, or that the witness was hostile.[1] The trial court had found both that the State was surprised and that the witness was hostile.
On appeal, the defendant argues that the prosecutor did not show that he had personally questioned the witness prior to placing him on the stand, and that he could not legitimately have been surprised when the witness testified as he did.
As we view the facts, they demonstrate that the prosecuting attorney had in his possession a typewritten document, signed by the witness. The prosecutor began questioning the witness at trial. He received an unanticipated response when the witness testified that he had not seen the defendant or any others go into or come out of the victim's house.
The prosecutor justifiably believed that the witness would testify in accordance with the earlier signed statement. There has been no showing nor indeed any indication that the prosecutor was aware that the witness was going to testify in an unexpected manner at trial.
Under the circumstances we believe that the judge correctly ruled that the prosecution was surprised, and that the witness by virtue of his unfavorable testimony was hostile. Accordingly it was not improper for the judge to permit the prosecutor to attempt to impeach the credibility of the witness.
Defendant relies upon State v. Browning, 290 So.2d 322 (La.1974), State v. Mims, 263 La. 193, 267 So.2d 570 (La. 1972), and State v. Bodoin, 153 La. 641, 96 So. 501 (La.1923). We find the facts here distinguishable from Browning, Mims and Bodoin, because in all three of those cases, the party claiming surprise either admitted that he was not surprised or had no supportable ground for such assertion.
In brief, and for the first time, the defendant argues that it was never proven that Jackson had made a prior contradictory statement, for while Jackson admitted that he had spoken to the investigating officers, and that his signature appeared on the document, he claimed that he could neither read nor write and that parts of the "statement" had not been given by him. Furthermore, the State did not present testimony from the police officer or officers who purportedly took Jackson's statement. Consequently, the defendant argues, all that existed was a typewritten document bearing Jackson's signature.
Indeed the statement was not admitted in evidence. When it was offered by the prosecutor, the defendant objected, not on the basis that proof the witness gave it was lacking, but that it was hearsay. The objection was sustained by the trial judge (on the grounds of hearsay, the ruling was erroneous, we believe), and the statement was excluded. Whatever merit there may be to the defendant's contention that the State did not prove that the witness made a prior inconsistent statement, it is not before us, for after the attempted impeachment fell short there was no objection to the State's failure to complete their attempted impeachment, no motion for a new trial (meritorious or not) was made, and no admonition by the trial judge was sought.
We find no merit in this Bill of Exceptions.
*766 Bill of Exceptions No. 2.
After the trial court ruled that the State could attempt to impeach its own witness, Charles Jackson, the jury was returned to the courtroom and the State began the impeachment procedure. At the outset of this further questioning of Jackson before the jury, the prosecutor stated that he was going to read to the witness the statute on perjury. Defense counsel immediately objected, contending that this was a badgering of the witness and stating that everyone is presumed to know the law. The trial judge overruled the objection because of the witness' earlier testimony that he did not know how to read or write and had "no knowledge." He thereupon permitted the prosecutor to read to the witness the perjury statute, including the penalty provision. Defendant reserved and perfected Bill of Exceptions No. 2 to this ruling of the trial judge.
In brief, defendant contends that not only should the State not have been permitted to "badger" the witness but that allowing the reading of the statute in the presence of the jury rather than outside their presence was error.
Perhaps a preferable procedure would have been to have the statute read to the witness outside the presence of the jury. Defendant, however, did not make this request at trial. And even if we were to be concerned that the prosecutor was badgering the witness or implying to the jury that he should not be believed, we would still be inclined to find no prejudice accruing to the defendant. The trial court had already determined that the State could impeach the credibility of its witness by showing prior inconsistent statements, and the State had proceeded to do so. Any possible discrediting of the witness, by reading the perjury statute to him, added nothing to what the State was already attempting to do by leading questions relative to a prior inconsistent statement.
This bill has no merit.
Our inspection of the pleadings and proceedings in the case reveals that the defendant was sentenced to "natural life without benefit of probation, pardon, parole, suspension or commutation of sentence." (emphasis provided)
Section 10 of Article V of the Louisiana Constitution of 1921,[2] in effect at the time defendant was sentenced, provided:
"The governor shall have power to grant reprieves for all offenses against the state; and may, except in cases of impeachment, or treason, upon the recommendation in writing of the lieutenant governor, attorney general, and presiding judge of the court before which the conviction was had, or any two of them, grant pardons, commute sentences, and remit fines and forfeitures; provided, however, that each first offender who has never previously been convicted of a felony shall be eligible for pardon automatically upon completion of his sentence without the aforementioned recommendation in writing. In case of treason he may grant reprieves until the end of the next session of the legislature, in which body the power of pardoning is vested."
*767 That provision of the Constitution granted to the Governor the authority to grant pardons and commute sentences. Both the pardoning power and the power to commute sentences have been held to be executive functions which cannot be restricted by the legislature. State v. Lee, 171 La. 744, 132 So. 219 (1931); State v. Varice, 292 So.2d 703 (La.1974). Nor can the judiciary attempt to restrict the Governor in the exercise of his authority to grant pardons and commute sentences. Consequently, we hold that the sentence imposed against the defendant is invalid and must be set aside.
Notwithstanding that the sentence is invalid, the conviction, being valid, can be affirmed. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); State v. Varice, 292 So.2d 703 (La.1974).
For the reasons assigned, the conviction is affirmed, but the sentence is annulled and set aside, and the case is remanded to the Criminal District Court for the Parish of Orleans with instructions to the trial judge to sentence the defendant to natural life without benefit of parole, probation, or suspension of sentence.
NOTES
[1] La.R.S. 15:487 provides:

"No one can impeach his own witness, unless he have been taken by surprise by the testimony of such witness, or unless the witness show hostility toward him, and, even then, the impeachment must be limited to evidence of prior contradictory statements."
[2] The comparable provision in the Louisiana Constitution of 1974 is Article 4, Section 5 (E), which provides:

(1) The governor may grant reprieves to persons convicted of offenses against the state and, upon recommendation of the Board of Pardons, may commute sentences, pardon those convicted of offenses against the state, and remit fines and forfeitures imposed for such offenses. However, a first offender never previously convicted of a felony shall be pardoned automatically upon completion of his sentence, without a recommendation of the Board of Pardons and without action by the governor.
(2) The Board of Pardons shall consist of five electors appointed by the governor, subject to confirmation by the Senate. Each member of the board shall serve a term concurrent with that of the governor appointing him.