343 So.2d 720 (1977)
STATE of Louisiana
v.
Clifford SELMON.
No. 58638.
Supreme Court of Louisiana.
March 7, 1977.
Bernard A. Horton, Metairie, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry Connick, Dist. Atty., M. Charles Brandt, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Defendant Clifford Selmon was charged by bill of information with an aggravated battery occurring on July 1, 1975, in violation of R.S. 14:34. He waived trial by jury and was subsequently found guilty as charged by the trial judge on November 7, 1975. Thereafter the State filed a multiple bill, pursuant to R.S. 15:529.1, charging that defendant had previously been convicted of three different crimes. To this bill defendant filed a motion to quash. On June 11, 1976 the trial judge quashed the bill insofar as two California convictions were concerned because the records of those guilty *721 pleas did not affirmatively reveal that defendant was either represented by counsel or had waived his rights. However, insofar as the bill alleged a prior Louisiana conviction for aggravated battery committed on February 26, 1975, the judge overruled the motion to quash and found defendant to be a "second offender." Defendant was later sentenced to four and one-half years at hard labor. He relies upon two assignments of error for reversal of his conviction.

Assignment of Error No. 1
During the cross-examination of a defense witness the State inquired whether the witness knew what perjury was and when he responded in the negative the prosecutor briefly explained the crime, told the witness the penalties for perjury and and also mentioned that due to the witness' past record the penalties would be enhanced if he were convicted of perjury. The defense counsel strenuously objected to this line of questioning on the basis that the prosecutor was intimidating the witness. The trial judge permitted the questioning and this ruling forms the basis of this assignment of error.
In State v. Spotville, 308 So.2d 763 (La.1975), the court noted that the "preferable procedure" would be to read the perjury statute to the witness out of the presence of the jury. The court further noted that in that case the reading of the statute in the presence of the jury created no prejudice because even assuming that such tactics "badgered" the witness or implied to the jury that the witness should not be believed, the State had already begun impeaching the witness by prior inconsistent statements, and the possible discrediting of the witness by reading the perjury statute added nothing to what the State had already done. In this case the State had the witness on cross-examination, and the prosecutor did not dwell on the subject of perjury but only informed the witness, who admittedly did not know the consequences of his oath, of the importance of telling the truth. In addition, this was not a jury trial, and the judge found that the witness was in fact not intimidated. This assignment does not present reversible error.

Assignment of Error No. 2
In this assignment defendant contends that the trial judge erred in overruling his motion to quash the multiple bill. He argues that since Louisiana Constitution Article I, § 20 restores "full rights of citizenship. . . upon termination of state . . . supervision following conviction for any offense," the State is precluded from using his prior conviction to enhance the penalty for aggravated battery. Since the offense utilized in the multiple bill was committed after the effective date of the present Constitution, we cannot rely for the disposition of this assignment upon prior cases which have pretermitted this issue on the basis that § 20 does not have retroactive effect. State v. Maduell, 326 So.2d 820 (La.1976). See also State v. Williams, 326 So.2d 815 (La.1976); State v. Harvey, 329 So.2d 731 (La.1976).
It has been held that a full complete pardon by the Governor precludes the use of the pardoned offense to enhance punishment. State v. Childers, 197 La. 715, 2 So.2d 189 (1941); State v. Lee, 171 La. 744, 132 So. 219 (1931). This is a minority rule; the great majority of American jurisdictions allow the use of a pardoned offense to enhance punishment under recidivist statutes. Miller, B. R., The Declaration of Rights: Criminal Provisions, 21 Loy.L.Rev. 43, 50 (1975); Annot., Pardon as Affecting Consideration of Earlier Conviction in Applying Habitual Criminal Statute, 31 ALR2d 1186. In addition, the Louisiana cases involved full pardons restoring the status of innocence, "not a mere restoration to citizenship . . ." State v. Lee, 171 La. at 748-49, 132 So. at 220. Thus, it does not appear that the cited cases are authority for defendant's proposition. Rather, it is necessary to determine the sense of Article I, § 20 from its wording and the drafters' intent.
As distinguished from the pardons in the Lee and Childers cases, by its express wording § 20 only restores "rights of citizenship." *722 Thus, the provision does not contemplate that the status of innocence be restored; only that those rights a citizen may exercise shall be available once supervision following conviction has ceased. Furthermore, only rights which were taken away by the conviction may logically be "restored." A person, prior to his conviction, does not have a "right" to prevent the use of convictions to enhance punishment for later offenses; the section does not admit of a construction that the restoration of the rights of citizenship precludes the operation of the habitual offender statute.
The constitutional debates on this section support the conclusion that the habitual offender laws were not rendered unconstitutional by the adoption of this provision. As originally proposed the section provided that "full rights" be restored. However, this original wording precipitated debates on whether the broad language would affect the applicability of multiple offender laws. Hargrave, L., The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L.Rev. 1, 64 (1974). The debates reveal that the ultimate language, "rights of citizenship," was adopted to make it clear that the drafters' intent was to restore the customary rights a citizen may exercise (the rights to vote, work, hold public office, etc.) and not to automatically erase the fact of the conviction. Verbatim Transcripts of the Constitutional Convention of 1973, Vol. XIV, 44th day, pp. 44-45, 57-58, 60-61 (hereinafter cited as Verb.Tr.). See also Hargrave, supra, at 64. Indicative of the drafters' intent in this regard is the following passage where delegate Gravel stated:
". . . Let me make sure that there is no misunderstanding about what this particular amendment does. All it does, and I think Mr. Derbes has already said it, but I think it needs to be said again, is to say that after a person has served his time in the penitentiary or in jail, or after he has served his period of probation and/or parole, after, so to speak, his debt fully to society has been paid, society will then say, `Okay, we're going to restore to you a couple of limited rights, the rights that you, as a citizen have, and that is the right to vote and the right to hold a job, let's say with the state, or to run for office. It doesn't do anymore than that. It doesn't say that you can't be prosecuted as a second, third, fourth, or fifth offender in the future if you commit other offenses. It doesn't say that you are pardoned for the crime that you have committed and that your slate has been wiped clean. It simply says that we're going to give you back the minimum things that have been taken from you because you have earned them. You have served your time or you have responded to the duties and obligations imposed upon you by the order of probation or the order of parole, depending upon what the case may be. This gives some additional hope to the man who has really tried to and has done what society says he must do, and that is, pay his debt. He's done it. Now, that's all that this amendment does. Mr. Chairman, if there are no further speakers, I would like to move the previous question." Verb.Tr., pp. 60-61.
Therefore, we conclude that the multiple billing in this case does not violate La.Const. Art. I, § 20 and the judge properly overruled defendant's motion to quash same.
For the foregoing reasons, the conviction and sentence are affirmed.