363 So.2d 462 (1978)
STATE of Louisiana
v.
Lionel MUSE.
No. 61870.
Supreme Court of Louisiana.
October 9, 1978.
*463 J. Arthur Smith, III, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Ralph Roy, Marilyn C. Castle, Asst. Dist. Attys., for plaintiff-appellee.
DIXON, Justice.
Lionel Muse and Raymond Williams were jointly charged by bill of information with the crime of simple burglary. Subsequently, the State amended the bill of information to charge defendants in two separate counts with the crime of theft of property valued in excess of $500 in violation of R.S. 14:67 and receiving stolen things valued in excess of $500 in violation of R.S. 14:69. The defendants were tried separately, and defendant Muse waived his right to trial by jury, electing to be tried by the court. After trial he was found guilty as charged in count one and not guilty in count two. Defendant was sentenced to serve five years at hard labor. On appeal he relies on *464 seven assignments of error for reversal of his conviction and sentence.
The facts adduced at trial by the State are: Upon returning home after work, Mr. Farritor of Baton Rouge found that his house had been burglarized during the day. Numerous items were missing from his house including a foreign camera, a Timex watch, stereo speakers, turntable and receiver. Police who were called to the home discovered some of the missing stereo equipment hidden under a bush in an alleyway behind Mr. Farritor's home. The officers, believing that the burglars would return for the stolen property, put the place under observation.
After dark on the same date, Muse drove a pickup truck down the private alley, turned off the truck's headlights about one hundred yards from the stolen property, and drove until he reached the stolen property. Muse then stopped the truck, turned on the headlights and he and Williams got out of the truck and started to take the stolen property from under the bushes. At this point, the police officers appeared and arrested the defendants. The truck was registered in Green's name, and when the police went to Green's house they found the missing camera that had been taken from Mr. Farritor's home that same day. Green testified at the trial that Muse gave him the camera as payment for borrowing the truck.

Assignments of Error Nos. 1, 2 and 3
Defendant consolidated his arguments on specifications of error numbers 1, 2 and 3 because they are closely related and involve the important question of the constitutionality of R.S. 15:432[1] which provides that a person in the unexplained possession of property recently stolen is the thief.
Defendant contends in Assignments of Error Nos. 1 and 2 that the trial court erred in applying R.S. 15:432 when denying defendant's motion for acquittal because R.S. 15:432 is unconstitutional in that it purports to relieve the State of its constitutional burden of proving beyond a reasonable doubt each and every element of the crime charged. In Assignment of Error No. 3, defendant further contends that the trial judge erred in failing to charge himself as to the entirety of requested special charge number 2 which read:
"The defendant is `presumed innocent until proven guilty' of every essential element of the crime charged, La.Const. of 1974, Art. I, § 16, U.S.Const. Therefore, the statutory presumption created by R.S. 15:432 that `the person in the unexplained possession of property recently stolen is the thief is unconstitutional, without effect, and cannot relieve the state of its burden of proving beyond a reasonable doubt each and every essential element of the crime charged; rationale of State v. Searle, 339 So.2d 1194 (La. 1976), and authorities cited therein."
Defendant argues that R.S. 15:432 places on the defendant the burden of proving his innocence, and, consequently, it violates Art. 1, § 16 of La.Const. of 1974 and his right to remain silent. He further contends that R.S. 15:432 fails to meet federal and state due process standards, that it shifts the ultimate burden of persuasion to the defendant and that it relieves the State of the necessity of producing any evidence that defendant committed the essential elements of the crime of theft, so the State no longer has the constitutional burden of proving beyond a reasonable doubt each and every fact necessary to constitute the *465 crime charged. Finally, defendant contends that it cannot be said with substantial assurance that the presumed fact (that Muse committed the theft) flows beyond a reasonable doubt from the proven fact (that Muse possessed the stolen property) because without R.S. 15:432 presumption there is no evidence as to who committed the theft.
In State v. Searle, 339 So.2d 1194 (La.1976), this court questioned the continuing validity of R.S. 15:432 and suggested legislative attention to the problems, but in Searle, the court said the statute was not unconstitutional on its face, State v. Womack, 283 So.2d 708 (La.1973). As applied to a particular case, if the meaning of the presumption is that defendant must explain his possession of the stolen property to the police or jury, the presumption would not be constitutionally permissible. The statute cannot be interpreted to mean that the defendant must do anything other than produce some evidence contrary to or, at most, create a reasonable doubt as to the presumed fact to destroy the presumption. Otherwise, the ultimate burden of persuasion upon an essential element of the crime would be shifted by the presumption to the defendant in violation of federal and state constitutional principles. Searle, supra, at 1203. See also, State v. Montoya, 340 So.2d 557 (La.1976). The prosecution must demonstrate that the presumed fact must beyond a reasonable doubt flow from the proven fact on which it depends because it would be a denial of due process under both the state and federal constitutions to allow a defendant to be convicted upon the basis of a presumed fact which could not beyond a reasonable doubt be inferred from proven facts. Searle, supra, at 1205. See also, State v. Wingerter, 339 So.2d 1 (La.1976).
Most recently, in State v. Coleman, 358 So.2d 289, 292 (La.1978), this court stated that it has previously found no constitutional defect when the effect of the R.S. 15:432 presumption is shown only to create an inference that the person in possession of recently misappropriated property is the misappropriator; and so long as in the context of the charge, the jury is adequately informed that the defendant need not testify to the circumstance of his possession of the misappropriated article any more than in the instance of any other circumstantial evidence pointing toward guilt. State v. Curry, 319 So.2d 917 (La.1975), State v. Womack, supra. See also, State v. Jamerson, 341 So.2d 1118 (La.1977).
C.Cr.P. 778 provides that in a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged if the evidence is insufficient to sustain the conviction. This court's review of a denial of a motion for acquittal is limited to determining whether there is a total lack of evidence to prove the offense or any element of the offense. State v. Gibson, 359 So.2d 147 (La.1978).
In the instant case, during a bench trial, the judge refused to charge himself that the presumption created by R.S. 15:432 was unconstitutional. The judge acknowledged that one cannot convict unless the evidence, direct and circumstantial, in the case eliminates every reasonable explanation or hypothesis of innocence. The judge stated:
". . . Now, that presumption to my mind, does not mean that the State must not present a case which would convince the trier of fact beyond a reasonable doubt according to the accused his presumption of innocence. What it does mean to me though is that in its presentment the State must in affect (sic) show the trier of facts that the circumstances under which the custody or possession of the particular item is placed in the hands of the party of the accused, is such that he could not have obtained it except by having been involved in a theft, a taking without the consent, leaving to the accused, if he wishes, to come in and explain,. . . and I don't think that flies into the teeth of the presumption of innocence. . . ."
The judge stated that he saw nothing unreasonable about drawing an "inference" from the disappearance of the camera from the burglarized home and Green's loaning the truck to Muse in return for the camera.
*466 The trial judge concluded that Mr. Williams was not involved when Mr. Green got the camera from Muse and loaned the truck to Muse.
The trial judge recited the essential elements of the crime of theft and said that he saw "some evidence as to each essential ingredient of the offense charged." In overruling the defense counsel's motion for acquittal the trial judge stressed the evidence upon which he was making his ruling:
". . . Intentional means as distinguished from accidental and I think the circumstances under which the receiver and the turntable were stashed there circumstances under how they [stolen property] were approached and who was driving the vehicle [Muse] and who obtained the vehicle [Muse] and who turned the another piece of property [camera] over to Mr. Green [Muse], which came out of the same house [as the other stolen property] which was out there in the alleyway, the other property your motion's overruled."
The inference of R.S. 15:432 was not unconstitutionally applied in the instant case. Defendant's Assignments of Error Nos. 1, 2 and 3 are without merit.

Assignment of Error No. 4
Defendant contends that C.Cr.P. 482 violates the federal and state constitutional prohibition against placing a defendant twice in jeopardy for the same offense, because pursuant to C.Cr.P. 482 the bill of information charged defendant with two offenses, theft and receiving stolen property, both offenses of which allegedly arose from the same act (possession of stolen property).
C.Cr.P. 482 provides:
"A. An indictment for theft may also contain a count for receiving stolen things, and the defendant may be convicted of either offense. Where two or more persons are jointly indicted for these offenses, any or all of the persons indicted may be found guilty of either of the offenses charged. The district attorney shall not be required to elect between the two offenses charged."
The Official Revision Comment to C.Cr.P. 482 explain the situations in which use of the alternative charging procedure is contemplated:
"(a) This article, following Art. 246 of the 1928 Code of Criminal Procedure, provides for a situation where the state is frequently in justifiable doubt as to which crime will be established by the evidence adduced at the trial. A receiver of stolen things (R.S. 14:69) will be guilty of theft (R.S. 14:67), rather than receiving, if it develops that he procured or in any way participated in the stealing of the goods. This article authorizes the charging of these distinct crimes in separate counts. It is for the jury to determine which charge is supported by the evidence; therefore, the article expressly states that the prosecuting officer shall not be required to elect between the two offenses charged."
The Fifth Amendment provisions prohibiting double jeopardy were made applicable to the states in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Further, the Louisiana Constitution of 1974, art. 1, § 15, provides that no person shall be twice placed in jeopardy for the same offense. The United States Supreme Court defined the guarantee against double jeopardy as including three separate constitutional protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711 at 717, 89 S.Ct. 2072 at 2076, 23 L.Ed.2d 656 at 665 (1969).
Recently, in State v. Williams, 359 So.2d 115 (La.1978), the very issue as in the instant case was addressed and after reasoning as above, we stated:
"A reading of Article 482 in conjunction with the criteria set forth by the United States Supreme Court in Pearce readily demonstrates that the article does not violate any of the interests sought to be protected by the Fifth Amendment. Under the article, an accused may not be subjected to multiple prosecutions for the *467 same offense, whether upon conviction or acquittal. In fact, the effect of the article is that there is to be a single prosecution resulting in an acquittal or a single conviction for theft or receiving stolen goods. Further, . . . the statute does not put an accused in danger of receiving multiple punishments for the same offense; the article is couched expressly in the alternative, and provides that the defendant may be found guilty of either offense not both offenses." 359 So.2d at 117.
This Assignment of Error No. 4 is without merit.

Assignments of Error Nos. 5, 6 and 7
Defendant contends that trial court erred in allowing the prosecution to impeach, threaten, intimidate and cross-examine its own witness, in failing to grant a mistrial despite prejudicial misconduct of the prosecutor, and in refusing to have all the proceedings in open court recorded and allowing certain proceedings to be conducted in open court outside the presence of the trial judge.
Assignments of Error Nos. 5, 6 and 7 resulted from the testimony of Mr. Green, State witness, who loaned his truck to Muse in exchange for the stolen camera. On direct examination, Mr. Green testified that Muse gave him the camera in payment for the use of Green's truck, that he had the camera only a short time before the police took it from him but that he could not remember when Muse gave him the camera. To refresh his memory the prosecutor asked for his prior sworn testimony at the preliminary examination hearing where Green had testified that he was given the camera by Muse before Muse took the truck. The defense lawyer objected that the prosecutor was cross-examining or impeaching his own witness but the trial judge called a recess so that the witness could refresh his memory. After recess, the defense lawyer objected again and assigned error because the exchange between prosecution and Mr. Green was not transcribed and because the judge was not present. Calling of a recess is within the discretion of the trial judge, State v. Brown, 322 So.2d 211, 216 (La. 1975), and during the recess trial is not going on and the judge need not be present during recess. Further, in the instant case, a bench trial, the judge, as trier of fact, should refrain from hearing exchanges that take place outside the trial record between attorney and his witness.
Defendant also contends that the State impeached its own witness, Mr. Green. The trial judge called the recess to allow the witness to refresh his memory as to his previous testimony under oath at the preliminary examination. Before recess, the State did not impermissibly impeach its own witness but simply asked Mr. Green to refresh his memory which it has a right to do pursuant to R.S. 15:279.[2] After recess, the State argued in its appellate brief and the trial record supports its argument that the State was surprised by Mr. Green's continued lack of memory in the face of his contradictory prior sworn testimony and his hostility. Under such circumstances, R.S. 15:487 provides:
"No one can impeach his own witness, unless he have been taken by surprise by the testimony of such witness, or unless the witness show hostility toward him, and, even then, the impeachment must be limited to evidence of prior contradictory statements."
In State v. Spotville, 308 So.2d 763 (La. 1975), the State witness signed a statement asserting that he saw the defendant enter the rape victim's home, but at trial the witness denied having seen anyone enter the victim's home. This court found no error in permitting the prosecutor to attempt to impeach the credibility of the witness. The court reasoned that the prosecutor justifiably believed that the witness would testify in accordance with the earlier signed statement. In the instant case, the *468 prosecutor did not go so far as to read Mr. Green's prior inconsistent statement in open court in an attempt to impeach him but only asked Mr. Green to use it to refresh his memory during recess that the judge called.
Finally, the defendant contends that the mistrial should have been called because of the prosecutor's conduct during recess. Defendant contends that the prosecutor threatened Mr. Green "that if he didn't refresh his memory in accordance with that preliminary hearing transcript that he was going to be charged with perjury." Defendant contends that the prosecutor threatened and intimidated Mr. Green. The prosecutor stated at the trial, "I told him that if he testified substantially contradictory to what he had on a former occasion, that under my sworn duty, I was obliged that he would be charged by me with perjury, which I believe the law says is perjury. That's my position. I wanted him to understand me. I wasn't threatening him. I was telling him." The State, in its appellate brief, argues that the comment was not made to influence the finder of fact because it was made during recess.
R.S. 14:124 provides:
"It shall constitute perjury whenever any person, having taken an oath required by law, or made an equivalent affirmation, swears or affirms any fact or state of facts material to the issue or question in controversy; and thereafter in the same or other proceedings, where such matter is material to the issue or question in controversy, swears or affirms in a manner materially contradictory of or inconsistent with his former sworn or affirmed statement. It shall not be necessary for the prosecution, in such case, to show which of the contradictory or inconsistent statements was false; but it shall be an affirmative defense that at the time he made them, the accused honestly believed both statements to be true.
This article shall only be applicable in cases where at least one of the contradictory or inconsistent statements was made in, or for use in, a judicial proceeding or a proceeding before a board or official wherein such board or official is authorized to take testimony."
In Spotville, supra, at 766, after the trial court ruled that the State could attempt to impeach its own witness, the defendant contended that the State was permitted to "badger" the State witness by reading to him the perjury statute in the presence of the jury rather than outside their presence. This court noted that the "preferable procedure" would be to read the perjury statute to the witness out of the presence of the jury. The court further noted in Spotville that the reading of the statute in the presence of the jury created no prejudice because even assuming that such tactics "badgered" the witness or implied to the jury that the witness should not be believed, the State had already begun impeaching the witness by prior inconsistent statements, and the possible discrediting of the witness by reading the perjury statute added nothing to what the State had already done by leading questions relative to a prior inconsistent statement.
Further, in State v. Selmon, 343 So.2d 720 (La.1977), during cross-examination of a defense witness the State inquired whether the witness knew what perjury was and when he responded in the negative the prosecutor briefly explained the crime, told the witness the penalties for perjury and also mentioned that due to the witness' past record the penalties would be enhanced if he was convicted of perjury. The defendant counsel strenuously objected on the basis that the prosecutor was intimidating the witness. This court reasoned that the prosecutor did not dwell on the subject of perjury but only informed the witness of the importance of telling the truth. In addition, in Selmon noting that the trial was not a jury trial, and that the judge found that the witness was in fact not intimidated the court found no reversible error.
In the instant case, the possibility of prejudice to the defendant was not as great as in Spotville or in Selmon. The prosecutor's suggestion of perjury occurred outside the presence of the trier of fact. Also, the trial record does not indicate that Mr. Green was intimidated by the threat of a perjury charge "if he didn't refresh his memory in accordance with that preliminary hearing *469 transcript" because after the recess Mr. Green continued to testify repeatedly that he did not know when Muse gave him the camera for use of the truck.
These Assignments of Error Nos. 5, 6 and 7 are without merit.
Accordingly, the conviction and sentence are affirmed.
CALOGERO, J., concurs and assigns reasons.
CALOGERO, Justice, concurring.
I concur in the majority's determination that R.S. 15:432 was not unconstitutionally applied in this trial which was before a judge alone. The grave danger of the jury's inability to properly interpret the presumption and its effect did not exist in the instant case. See the dissent of Dennis, J., in which I joined in State v. Coleman, 358 So.2d 289 (La.1978).
NOTES
[1] "A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; such is the presumption attaching to the regularity of judicial proceedings; that the grand jury was legally constituted; that public officers have done their duty; that a relation or subject-matter once established, continues, but not that it pre-existed; that the defendant intended the natural and probable consequence of his act; that the defendant is innocent; that the defendant is sane and responsible for his actions; that the person in the unexplained possession of property recently stolen is the thief; that evidence under the control of a party and not produced by him was not produced because it would not have aided him; that the witnesses have told the truth." R.S. 15:432.
[2] "A witness may be allowed to refresh his memory by reference to his testimony given on the preliminary examination, or at a coroner's investigation, or on a previous trial, or, for the purpose of refreshing his present memory a witness may examine memoranda, and it is immaterial by whom or when the memoranda were made, provided that, after such inspection, the witness can testify to the fact." R.S. 15:279.