427 So.2d 1293 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Elton Dunn GIPSON, Defendant-Appellant.
No. 15188-KA.
Court of Appeal of Louisiana, Second Circuit.
February 22, 1983.
*1294 The Indigent Defender Office by Robert E. Shadoin, Ruston, for defendant-appellant.
T.J. Adkins, Dist. Atty., Dan J. Grady III, Asst. Dist. Atty. by Dan J. Grady III, Ruston, for plaintiff-appellee.
Before HALL, FRED W. JONES and SEXTON, JJ.
FRED W. JONES, Judge.
Defendant, Elton Dunn Gipson, was found guilty by jury, as charged, of second degree murder (R.S. 14:30.1), and sentenced to life imprisonment at hard labor without benefit of parole. Defendant appeals, presenting seven assignments of error. Finding no merit in any of the assignments, for the reasons explained, we affirm the conviction and sentence.

*1295 Context Facts

Late in the evening of February 13, 1982 the defendant attended a social affair at the home of his sister-in-law. During a game of dominoes Limaus White chided the defendant about a fight with a third party, occurring some months before, in which the defendant had been bested. When White persisted in what defendant viewed as verbal harassment, the defendant became angry and left the room, assertedly to secure a gun.
When the defendant returned to the game room a short time later, White arose from his seat and, in the process, bumped his metal folding chair against the defendant, whereupon the latter slapped White. White advanced toward the defendant and was grabbed by defendant's brother, Willie Leon Dunn. White and Dunn began wrestling, eventually winding up out on the front lawn. Defendant followed them out of the house and, standing on the front porch, drew his revolver and fired one shot, striking White in the back, fatally wounding him.

Assignments of Error Nos. 1 and 2
By these assignments defendant argues that the trial judge erred in allowing the State to refresh the memory of its witness, Willie Hudson, by the use of an unsigned, unsworn statement, and also by warning the witness of a possible perjury charge and a contempt proceeding.
Hudson was playing dominoes with the defendant and the victim on the evening in question. Several days after the shooting incident he gave a recorded statement to investigating officers in which he related that defendant left the game with the explanation he was "tired of Limaus picking at him" and he was "going to get his gun."
At the trial in August 1982, in response to initial questioning by the State, Hudson denied that the defendant said anything when he left the game table. When the State started to interrogate him concerning the recorded statement, defense counsel objected and court was recessed until the following morning. When the trial resumed, outside the presence of the jury the trial judge permitted the State to refresh Hudson's memory by showing him a transcription of his recorded statement. The witness then acknowledged that he made the statement (which was filed in the record but not shown to the jury), that it was accurate and that reviewing it did indeed refresh his memory. The jury was returned to the courtroom and Hudson testified substantially in accordance with his prior statement to the officers.
Contrary to the defendant's contention at the trial, the State was not attempting to impermissibly impeach its own witness, but was simply refreshing his memory as authorized by La.R.S. 15:279.[1] See State v. Muse, 363 So.2d 462, 467 (La.1978).
Before Hudson testified in accordance with his recorded statement, outside the presence of the jury the trial judge warned the witness that he had closely observed his demeanor while being interrogated and that Hudson was on the verge of committing perjury and of being held in contempt of court. Defendant contends that this action by the trial judge intimidated the witness and tainted his testimony.
In State v. Muse, supra, the reviewing court found no prejudice to the defendant when the prosecution, out of the presence of the jury, warned the defendant of a possible perjury charge. Although the warning in this case was given by the trial judge, there is no indication of prejudice since the jury did not hear the admonition and the defendant merely testified later in accordance with the prior statement.
There is, therefore, no merit to these assignments of error.

*1296 Assignment of Error No. 3

Defendant argues in this assignment that an inculpatory statement he gave to investigating officers was inadmissible because he never unequivocally expressed a willingness to answer questions without having an attorney present.
On the morning after the shooting, the defendant, a 31 year old male who had completed the 12th grade, was taken to the Lincoln Parish Sheriff's office as a suspect in the crime. After having been fully advised of his Miranda rights, including the right to counsel (which he acknowledged by signing a printed form), the following pertinent colloquy occurred:
"JB Okay would you check here? Are you willing to answer questions at this time without a lawyer? Yes or No?
EG Am I in to serious trouble?
JB I didn't understand you?
EG Am I in to serious trouble?
JB Well your not in any, your not charged at this time at all. You understand that don't you?
EG Well what I'm saying.
JB You understand that you are a suspect in the shooting incident that happened in the McMillian quarters.
EG I ain't gone sit here through it all I'm the one that shot him." (emphasis added)
The defendant then proceeded to answer further questions concerning the circumstances surrounding the homicide, without requesting the presence of or services of legal counsel.
We first note that defendant's statement to the effect that he shot the victim was not in response to a question, but was unsolicited and spontaneous. Consequently, it was admissible even if there had been no Miranda warnings given in advance. State v. Castillo, 389 So.2d 1307 (La.1980). Be that as it may, the record affirmatively shows that defendant was advised of and understood his right to legal counsel and effectively waived that right by proceeding to answer questions in the absence of an attorney. Further, the State laid the necessary predicate for admissibility of the inculpatory statement by proof that it was given freely and voluntarily.
This assignment lacks merit.

Assignments of Error Nos. 4 and 6
These assignments complain of the trial judge's refusal to allow the defendant to present evidence of the victim's reputation.
The defendant first attempted to elicit testimony from Willie Dunn, defendant's brother, as to whether the victim had a reputation for "hurting people." The trial judge sustained the State's objection to the question, ruling that the defendant had offered no evidence of a hostile demonstration or overt act by the victim, as required by La.R.S. 15:482.[2] This conduct by the victim has been jurisprudentially defined as acts of the victim which manifest to a reasonable person an intention to kill or do serious bodily harm to the defendant at the time the principal offense occurred. State v. King, 347 So.2d 1108 (La.1977).
According to the record, prior to the shooting the victim bumped the defendant with his chair and advanced, unarmed, toward the defendant. In response, defendant's brother started grappling with the victim. The defendant later shot the victim in the back. This conduct on the part of the victim certainly would not have indicated to a reasonable person that the victim intended to kill or seriously harm him. Therefore, the trial judge's ruling on this evidentiary question was correct.
During the course of defendant's testimony his counsel sought to show his state of mind at the time of the shooting, i.e., that the defendant feared the victim. The State's objection was sustained by the trial *1297 judge, again upon the basis that the defendant had not laid a proper foundation under La.R.S. 15:482.
Defendant argues that this ruling constituted reversible error by the trial judge since defendant should have been permitted to testify concerning his apprehension of danger and, in connection therewith, file in evidence the victim's criminal record.
Although evidence of specific prior acts committed by the victim may be relevant and admissible to show the defendant's state of mind at the time of the crime, prior to its admission the defendant must still establish the predicate required by La.R.S. 15:482  which this defendant had not done. See State v. Lee, 331 So.2d 455 (La.1975).
These assignments are without merit.

Assignment of Error No. 5
On direct examination by the defense, Willie Dunn stated he knew the victim "had shot a guy before." Although the defendant had still not complied with La. R.S. 15:482, rather than objecting to the testimony the prosecution, in its questioning of the witness, sought to show that the shooting was accidental. When Dunn was tendered back to the defendant, he attempted to introduce the pertinent court minute entry which would reveal that the victim pled guilty to "illegal use of a weapon" in response to the shooting charge. The State's objection to the admissibility of this evidence was sustained by the trial judge, again citing lack of compliance with La.R.S. 15:482.
Defendant contends that he was attempting to submit the evidence under La.R.S. 15:281[3] rather than 15:482.
As observed by the trial judge, evidence of the prior shooting by the victim and the attendant criminal proceedings would have been inadmissible if the State had objected contemporaneously. However, in the absence of that objection we agree with the defendant that the court minutes should have been admitted under La.R.S. 15:281. Despite this ruling, we find under the circumstances that the error committed by the trial judge was harmless since the State's intimation (made during the course of Dunn's cross-examination) that the shooting was accidental did not necessarily reflect upon or constitute an attack upon the credibility of the witness Dunn, who only related his information that the victim "had shot a man."
This assignment of error lacks merit.

Assignment of Error No. 7
Defense counsel posed, during the course of defendant's testimony, this question: "Mr. Gipson, from the time you arrived there [crime scene], did you drink continually?" Defendant responded: "Yes. Had a few mixed drinks."
The State objected to further questioning along this line because defendant failed to give prior notice of the defense of intoxication as allegedly required by La.C.Cr.P. Article 726.[4]
In this assignment the defendant argues that Article 726 requires prior notice to the State only when the defendant plans to offer medical or scientific evidence to show his mental condition or mental state, but *1298 does not apply to the defendant's own testimony relative to his mental state at the time of the offense.
We do not elect to apply such a restricted construction to Article 726. The article refers to "testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he [the defendant] had the mental state required for the offense charged ... (emphasis added) Since testimony of the defendant is not expressly excluded, the article obviously applies to it also.
Further, interpreting the article as referring only to the kind of mental disease or defect involved in the insanity defense would render it redundant. A defendant may not present evidence of a mental defect at the time of the offense unless he first pleads "not guilty and not guilty by reason of insanity" (La.C.Cr.P. Art. 651)  thereby giving the State notice at that stage of the proceedings of the defendant's intention to tender evidence at the trial relating to his mental condition. Under this construction, the notice requirement of Article 726 would be unnecessary.
La.R.S. 14:15, providing that intoxication may be a defense to a crime requiring the presence of a specific criminal intent, is located (along with the "insanity" article) in that subpart of the Louisiana Criminal Code dealing with the subject of criminal culpability. Therefore, intoxication is in the nature of an affirmative defense to a criminal charge and the burden is upon the defendant to prove the existence of that condition at the time of the offense. See LaFave & Scott, Criminal Law, Sec. 45, p. 351 (1972).
Testimony in this case pertaining to intoxication would deal with a "condition bearing upon the issue" of whether the defendant had the mental state required for the offense of second degree murder. Although the defendant did testify that he had a few mixed drinks prior to the shooting, the trial judge correctly sustained the State's objection to further testimony of this tenor since the defendant had not given the State prior notice of the defense of intoxication as required by Article 726.
This assignment lacks merit.

Decree
For the reasons explained, we affirm the defendant's conviction and sentence.
NOTES
[1] A witness may be allowed to refresh his memory by reference to his testimony given on the preliminary examination, or at a coroner's investigation, or on a previous trial, or, for the purpose of refreshing his present memory a witness may examine memoranda, and it is immaterial by whom or when the memoranda were made, provided that, after such inspection, the witness can testify to the fact.
[2] In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible.
[3] The redirect examination must be confined to the subject matter of the cross-examination and to the explanation of statements elicited on cross-examination; but the application of this rule is within the discretion of the trial judge, provided that the opportunity be not denied to recross on the new matter brought out on the redirect.
[4] A. If a defendant intends to introduce testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offense charged, he shall not later than ten days prior to trial or such reasonable time as the court may permit, notify the district attorney in writing of such intention and file a copy of such notice with the clerk. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other orders as may be appropriate.

B. If there is a failure to give notice as required by Subsection A of this Article, the court may exclude the testimony of any witness offered by the defendant on the issue of mental condition.